## UNITED STATES v. BEIT BROS., Inc., et al.

### Cr. No. 6980.

District Court, D. Connecticut.

July 27, 1943.

See, also, 50 F.Supp. 590.

Robert P. Butler, U. S. Dist. Atty., and Milton Nahum, Asst. U. S. Dist. Atty., both of Hartford, for the government.

Charles V. James and Brown & James, all of Norwich, Conn., and George H. Cohen, of Hartford, Conn., for defendants.

SMITH, District Judge.

Defendant has raised the additional question of restriction of the application of Title III of the Second War Powers Act, 50 U.S.C.A. Appendix, § 633, to the subject of Army and Navy contracts alone. The prior enactment from which this title derived was so restricted. The history of the language of the act shows that the original provision which later became Title III of the Second War Powers Act was intended to liberalize contract methods of the Navy and to give Navy as well as Army orders priority. Act of June 28, 1940, Section 2, Subsection (a).

The Act of June 28, 1940, however, was amended by the Act of May 31, 1941, the origin of the particular language here in question. The present language of Section 301, Title III of the Second War Powers Act (specifically the language of Section 2(a) 2 of the Act of June 28, 1940 as thereby amended), derived therefrom, standing alone, is broad enough to authorize the allocation by the President of any material in which a shortage may exist, on such conditions and to such extent as the President may deem necessary or appropriate in the public interest or to promote the national defense.

The bill which became the Act of May 31, 1941, was reported by the Committee on Naval Affairs of the House of Representatives on April 29, 1941, with a statement in the House Report No. 460 that its purpose was "to permit control of the distribution of those products and materials in which shortages appear by reason of the impact of the defense program, and to permit the allocation of such products and materials to defense and to the most important civilian needs in preference to less important ones * * *."

The language of the act itself as well as of the House Report must be construed as intended to cover not only Navy materials but also a much wider civilian field, unless the context shows that the words were used in a more restricted sense than their usual meaning. This it does not do. Further, the hearings before the Committee on Naval Affairs, House of Representatives, April 28, 1941, referred to by the defendants in their brief, show not that the language was explained to the Committee as

intended to cover a narrow field, but that the broadest interpretation of the words was brought to the attention of the Committee and the language adopted with that interpretation before it.

Hearings before Committee on Naval Affairs
House of Representatives
April 28, 1941

Page 984.

"Mr. Smith (Blackwell Smith, Assistant Director, Priorities Division of Office of Production Management)

"* * * This coordination with the new price administration that has been set up I think calls for a word of clarification. · The President is given whatever powers you give him in his new act, and the President has already declared, to Mr. Leon Henderson's new Price Division, what he wants him to do, so the coordination of this additional power and our functions with Leon Henderson's functions will presumably follow completely automatically, in that the powers you give to the President he has already delegated along the two lines, and those lines will not be disturbed, to Leon Henderson and ourselves, and the coordination we have had so far with Mr. Henderson has been absolutely perfect.

"The Chairman. That is to be—

"Mr. Smith. This new administration of prices and civilian supplies.

"The Chairman. Does that come under the Division of Production, or where?

"Mr. Smith. It is a separate organization the President has set up, a week or so ago, which they refer to as the O.P.C.C.S.; Office of Price Control and Civilian Supplies, I think is the name of it. It is given broad administrative and advisory powers on the civilian side, and this act, insofar as it touches the civilian, will be covered in exactly the same way that that Executive order provides, without any new problem being raised, because these powers you give will go to the President and he has already divided the area between the two, so we will not get confused as to whether it is Leon Henderson's or whether it is our power that you confer in this area of allocating the scarce materials to civilians. The President has already provided for that.

"The Chairman. This act delegates the power to the President, which he will in turn pass on to the O. P. M., which in turn will pass it on to the Division of Priorities; is that the way it will work?

"Mr. Smith. So far as our function is concerned, and insofar as any strictly civilian function, the President has already handed that down to Leon Henderson, and presumably will continue to do so. I simply wanted to prevent any error as to whether we are encroaching on Leon Henderson's field by the statute. The answer is no, because the powers this statute provides all go to the President and he has already divided them and will continue to do so, so far as we have any reason to suppose, in the same way as he has already divided them.

"The Chairman. If the President had not divided them, under this bill he could have delegated them all to the Priorities Division.

"Mr. Smith. That is correct."

* * · * * *

Page 998.

"The Chairman. You have authority over anything that has to do with national defense—all material.

"Mr. Smith. (Geoffrey Smith, counsel, Priorities Division, Office of Production Management)

That relates to national defense.

"The Chairman. Every material has some bearing on national defense. You could hardly say that any material is devoid of national-defense relation. For instance, the cotton in the field has a bearing on the national defense, in that it furnishes the clothes for the troops, and is used in ammunition, so it has some worth. Therefore, everything is going to fall under allocation and priority by the provisions of this bill.

"Mr. Smith. Well, I think everything would if you stretch your definition of defense that far. We have taken the position that only when there is a fairly direct defense impact—we have not stepped aside into foods and clothing or any of those items. We have got our hands so full with the others that I don't believe we ever could.

"The Chairman. But there is power enough in here to permit that.

"Mr. Smith. There is power enough in here, if it can be determined that a material is important to the defense program. If a shortage is occurring, then you could deal with it under this bill. * * *"

Title III of the Second War Powers Act of 1942 must be interpreted, in the light of its legislative history, as of broader application than the Act of June 28, 1940.

The amended demurrer to the information is overruled.